UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
                                    )
VILLAGE WEST ASSOCIATES,            )
                                    )
         Plaintiff,                 )
                                    )
    v.                              )    C.A. No. 08-192
                                    )
RHODE ISLAND HOUSING AND            )
MORTGAGE FINANCE CORPORATION,       )
                                    )
         Defendant and Third        )
         Party Plaintiff,           )
                                    )
    v.                              )
                                    )
SHAUN DONOVAN, Secretary, United    )
States Dept. of Housing and Urban   )
Development,[1]                     )
                                    )
         Third Party Defendant.     )
                                    )
```

### DECISION AND ORDER

WILLIAM E. SMITH, United States District Judge.

Third Party Defendant Secretary of the United States Department of Housing and Urban Development ("HUD") moves to dismiss Defendant and Third Party Plaintiff Rhode Island Housing and Mortgage Finance Corporation's ("RIHMFC") complaint.   HUD's argument is that the United States Court of Federal Claims has exclusive jurisdiction over RIHMFC's impleader claims.   As then Circuit Judge Scalia once remarked, "[i]f there is a less profitable expenditure of the time and resources of federal courts

---

[1] Pursuant to Fed. R. Civ. P. 25(d), current Secretary Shaun Donovan has been substituted for former Secretary Roy Bernardi.

and federal litigants than resolving a threshold issue of which particular federal court should have jurisdiction, it does not come readily to mind." <u>Sharp v. Weinberger</u>, 798 F.2d 1521, 1522 (D.C. Cir. 1986). And so it is here. After careful consideration, HUD's motion will be granted.

I.   <u>Background</u>

The United States Housing Act of 1937, as amended in 1974 and most commonly referred to as "Section 8," created a national low-income housing program. 42 U.S.C. § 1437f. Under the program, low-income tenants pay rent for privately-owned housing based on their income and ability to pay. The federal government, through HUD, provides housing assistance payments to private owners to make up the difference between what the low-income tenant contributes and a pre-determined monthly "contract rent" for a particular dwelling or apartment unit. The higher the contract rent, the more HUD pays to the private owner.

HUD provides rent subsidies in two ways. In the first instance, HUD contracts directly with an owner through a Housing Assistance Payments ("HAP") contract. HAP contracts establish an agreed upon contract rent, and HUD pays the subsidy to the owner. In the second instance, a public housing agency is involved. HUD enters into an Annual Contributions Contract ("ACC") with the public housing agency, and the agency enters into a HAP contract with the owner. The ACC obligates HUD to provide funding to the

2

agency so the agency can pay the subsidy to the owner under its respective HAP contract.  In both scenarios, HUD provides all funding for the subsidies and prescribes, approves and directs the form of the HAP and ACC agreements.  See generally 24 C.F.R. § 883. The public agency acts as a contract administrator between HUD and the owner, and administers the HAP contract in accordance with HUD's requirements and directives.  See 24 C.F.R. § 883.602-607.

This case fits within the second scenario.  In 1981, RIHMFC entered into an ACC contract with HUD pursuant to 42 U.S.C. 1437, et seq.  Thereafter, RIHMFC entered into a HAP contract effective March 1, 1982 with Plaintiff Village West Associates ("Village West"), a limited partnership that owns a 35-unit multifamily rental housing project located in Woonsocket, Rhode Island.  The term of the RIHMFC/Village West HAP contract for the Woonsocket project extends through automatic renewals until 2012.  RIHMFC has similar Section 8 agreements for numerous Rhode Island properties.

The details of the evolution of the Section 8 program would add little value to the instant jurisdictional discussion.[2] Suffice it to say HAP contract rents paid by HUD were not static. Rather, as first set forth in 42 U.S.C. § 1437f(c)(2), HAP contracts provide for rent adjustments on at least an annual basis,

___

[2] The reader interested in a more extensive description should consult Cuyahoga Metro. Hous. Auth. v. United States, 57 Fed. Cl. 751, 753-55 (2003); Crest A Apartments Ltd. II v. United States, 52 Fed.Cl. 607, 609 (2002); or Nat'l Leased Hous. Ass'n v. United States, 105 F.3d 1423, 1425 (Fed. Cir. 1997).

based on adjustment factors the Government determines.   These factors, published in the Federal Register, are used to calculate the annual rent increases to which participating owners are entitled under HAP contracts.   24 C.F.R. § 888.201.   During the 1980s and 1990s, Congress revisited Section 8 and tweaked the procedures and requirements for HAP adjustments.   Needless to say, owners and agencies pushed for higher rents and favorable procedures, and sparred with HUD over the adjustment methods. Still concerned that subsidies were too high, Congress amended Section 8 in 1994 in two key ways.   <u>See</u> 42 U.S.C. 1437f(c)(2)(A); Pub.L.  No.  103-327,  108  Stat.  2298,  2315  (1994)  ("1994 amendments").

The 1994 amendments required owners in some circumstances to demonstrate that an adjusted rent would <u>not</u> exceed the rent for a similar unassisted housing unit.   <u>Id.</u>  They also reduced the annual rent adjustment factor where a given housing unit was occupied by the same tenant during a prior year.   <u>Id.</u>  On March 7, 1995, HUD issued Notice H 95-12 to implement the 1994 amendments.[3]  Although there is more to the story, the gist of the matter is that following the 1994 amendments, rents were often not increased at all, increased less than they had previously been, and/or increased only after owners submitted required materials.

---

[3] Although Notice H 95-12 expired on September 30, 1995, later HUD Notices made the provisions permanent.

II.  <u>Procedural Travel</u>

Village West filed a complaint in May of 2008 against RIHMFC alleging breach of contract.  Under its HAP contract with RIHMFC, Village West contends it is entitled to annual rent increases based on published adjustment factors; yet because of the 1994 amendments and subsequent HUD Notices, RIHMFC has failed to increase rents in accordance with the contract since 1995, thus damaging Village West.  Understandably, RIHMFC filed a third party complaint against HUD pursuant to Fed. R. Civ. P. 14(a).  RIHMFC alleges in this complaint that if it is liable to Village West for breach of the HAP contract, then HUD is liable to it because the 1994 amendments and HUD Notices are why RIHMFC cannot meet its obligations to Village West.  In other words, its hands are tied.  RIHMFC's complaint contains three counts: I (Administrative Procedure Act, or APA); II (Contract/Indemnification); and III (Declaratory Judgment).

It is worth noting that the substantive issues behind this procedural quandary are not novel.  Other owners with pre-1994 contracts have launched similar challenges against HUD.[4]  <u>See Park</u>

---

[4] The parties agree, and are correct, that Village West cannot maintain a direct contract action against HUD because of a lack of privity -- its HAP contract is with RIHMFC, not HUD.  <u>See</u> <u>Nat'l Leased Hous.</u>, 105 F.3d at 1435-37.  Moreover, Section 8 owners are generally not considered third-party beneficiaries to an agency/HUD ACC contract.  <u>See</u> <u>Nat'l Leased Hous.</u>, <u>id.</u> at 1436-37; <u>Katz v. Cisneros</u>, 16 F.3d 1204, 1210 (Fed. Cir. 1994) ("If there is a third party beneficiary at all, it is probably the low-income tenants.").

Props. Assocs., L.P. v. United States, 74 Fed.Cl. 264, 274-76 (2006) (requiring rent comparability studies constituted repudiation of HAP contract but reduction for non-turnover units did not); Statesman II Apartments, Inc. v. United States, 66 Fed.Cl. 608, 625 (2005) (reduction for non-turnover units constituted breach of HAP contract); Cuyahoga Metro. Hous. Auth. v. United States, 57 Fed. Cl. 751, 777-780 (2003) (1994 amendments rendered performance under HAP contracts impossible).

III. Standard of Review

    HUD moves to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).   HUD mounts a facial challenge to RIHMFC's complaint; the Court need not resolve factual disputes. It must "merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for purposes of the motion." Torres-Negron v. J&N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007) (quoting Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999)).   The Court construes RIHMFC's complaint liberally and indulges all reasonable inferences in its favor. Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

IV. Discussion

    It is hornbook law that federal courts have limited jurisdiction. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) ("without exception" courts must establish

jurisdiction as a threshold matter); <u>Feliciano v. Rullan</u>, 303 F.3d 1, 6 (1st Cir. 2002); <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995) (plaintiff has burden to prove subject matter jurisdiction).  HUD's motion rests on the premise that RIHMFC's impleader action is a run-of-the-mill contract claim against the United States.  It claims that though RIHMFC has conveniently couched its complaint as seeking injunctive and declaratory relief, at bottom RIHMFC seeks money damages through a complaint grounded upon rights that spring from the ACC contract.  Thus, the action falls within the Tucker Act, 28 U.S.C. § 1491, and the <u>exclusive</u> forum is the United States Court of Federal Claims ("Claims Court").[5]  In short, RIHMFC should fight Village West on its own. If RIHMFC becomes liable for damages, it can battle with HUD in the proper arena: the Claims Court.

RIHMFC sees it a different way.  It retorts that this is by no means "just" a contract case, and offers two purported bases for this Court's jurisdiction: the Administrative Procedure Act, 5 U.S.C. § 701, <u>et seq.</u> and 28 U.S.C. § 1331.[6]  RIHMFC argues its

---

[5] The Claims Court and federal district courts do have concurrent jurisdiction under the so-called Little Tucker Act (inapplicable here) when the claim against the United States is for less than $10,000.  28 U.S.C. § 1346(a)(2).

[6] Though the distinction gets blurred, the APA is not an independent source of jurisdiction.  It waives sovereign immunity for judicial review of non-monetary actions against the United States when there is no other adequate remedy in a court. 5 U.S.C. § 704. RIHMFC thus relies on the APA, the United States Housing Act and § 1331.  The other sources of jurisdiction it offers are non-

claims for declaratory and equitable relief fall under the APA, and urges the Court to conclude that the dispute "arises under" Section 8 because Congress and HUD set up and prescribed the HAP and ACC contracts at issue.  According to RIHMFC, the 1994 amendments and HUD Notices had a direct effect on RIHMFC's contractual rights and obligations, and given the federal interests involved, jurisdiction under § 1331 is warranted.  Or, put another way, the mere existence of a contract with HUD does not <u>per se</u> trigger the Claims Court's exclusive jurisdiction.

The Tucker Act provides the most common path for a suit against the United States involving a contract, because it provides jurisdiction <u>and</u> waiver of immunity in the Claims Court so long as the action: 1) is against the United States; 2) seeks relief over $10,000; and 3) is founded upon the Constitution, federal statute, executive regulation or governmental contract.  28 U.S.C. § 1491(a).  That path, however, is only exclusive to the extent no other court has authority to hear the action.  In other words, if a district court has independent grounds upon which to exercise subject matter jurisdiction (and a source of waiver of sovereign immunity besides the Tucker Act), then a plaintiff need not rely on

---

starters.  The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, standing alone cannot provide jurisdiction.  <u>Ernst & Young v. Depositors Econ. Prot. Corp.</u>, 45 F.3d 530, 534 (1st Cir. 1995).  By like token, mandamus jurisdiction under 28 U.S.C. § 1361 falls by the wayside given that RIHMFC can obtain relief in the Claims Court.  <u>Am. Sci. & Eng'g, Inc. v. Califano</u>, 571 F.2d 58, 62 (1st Cir. 1978).

the Tucker Act avenue in the Claims Court to sue the United States. See Bowen v. Massachusetts, 487 U.S. 879, 910 n.48 (1988) (Claims Court jurisdiction exclusive "only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court"); C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co., 903 F.2d 114, 119 (2d Cir. 1990) (Claims Court jurisdiction is "exclusive" only because typically another basis for jurisdiction and waiver of immunity rarely exists).

The question becomes, then, whether an independent basis for subject matter jurisdiction exists in this Court for RIHMFC's claims?  Answering this question requires close examination of the nature of the relief RIHMFC requests, and the source of the rights upon which its claim is founded.  This is because if RIHMFC's prime objective is to recover over $10,000 from the United States based on contract rights, then the claim belongs in the Claims Court under the Tucker Act, and this Court must reject RIHMFC's attempt to "cast a contract dispute in different terms so as to subject it to the jurisdiction of the district court." Am. Sci. & Eng'g, Inc. v. Califano, 571 F.2d 58, 61 (1st Cir. 1978).  On the other hand, if the essence of the action is not contractual but in the nature of an equitable request for interpretation of statutory or regulatory action and a declaration of rights, then jurisdiction in this Court may exist.

While RIHMFC's claims are dressed in equitable and declaratory garb, underneath it all what RIHMFC seeks is monetary relief based on obligations found in its ACC contract with HUD.  Its complaint seeks traditional contract remedies.  <u>See</u>, <u>e.g.</u>, ¶ 32 (HUD has breached the related ACC with RIHMFC . . . RIHMFC is entitled to indemnification by HUD for all costs and expenses it has sustained or will sustain to remedy those breaches).  The source of rights upon which RIHMFC bases its claim is the ACC -- absent the contract, RIHMFC would have no standing to challenge the 1994 amendments or implementing HUD notice. As discussed below, despite artful pleading the Court cannot ignore that, at bottom, RIHMFC aims to receive an order compelling HUD to specifically perform the ACC contract or provide monetary relief.  <u>See Megapulse, Inc. v. Lewis</u>, 672 F.2d 959, 967 (D.C. Cir. 1982); <u>Am. Sci. & Eng'g</u>, 571 F.2d at 63 ("[T]he essence of the action is in contract, and plaintiff cannot 'by the mystique of a different form of complaint' make it otherwise.") (quoting <u>Sprague Elec. Co. v. Tax Court</u>, 340 F.2d 947, 948 (1st Cir. 1965)).

RIHMFC seeks to avoid this result by mis-characterizing the case as an APA action, but this misplaced reliance only highlights why this is most properly deemed a contract case.  RIHMFC professes to seek "judicial interpretation of the statutory and administrative provisions" that govern calculation of contract rent increases for owners with pre-1994 HAP contracts.  <u>See</u> Dkt. No. 14,

p. 14. But what is it that the Court is being called upon to interpret? RIHMFC offers no satisfying response. It cannot be that the Court will interpret the propriety of the 1994 amendments, because the APA does not apply to Congressional action and, indeed, RIHMFC launches no real challenge to the law. See Cuyahoga Metro. Hous. Auth. v. United States, 65 Fed.Cl. 534, 544 (2005) ("There is no real debate that the 1994 Act [amending Section 8] is the law of the land."). And, the Court will not interpret the propriety of HUD's Notices, because RIHMFC has no claim that HUD exceeded its authority or erroneously interpreted the 1994 amendments (or had any discretion in the implementation, for that matter). RIHMFC is left asking the Court to interpret the effect of Congress's and HUD's actions on the ACC contract. It follows inexorably then that the gravamen of RIHMFC's complaint is that HUD breached the ACC contract, and the APA really has no role in this case.

Two final points on this issue. First, RIHMFC cannot manufacture an APA claim by way of a blanket request that the Court declare HUD's actions "arbitrary, capricious, an abuse of discretion, contrary to law, and/or contrary to constitutional right." Third Party Compl. p. 7. Stripped down, there is no basis for this demand -- simply calling something an APA claim does not make it so. See J.C. Prods., Inc. v. United States, 608 F. Supp. 92, 94-95 (W.D. Mich. 1984) (allegations that Department of Defense acted in an arbitrary or capricious manner cannot avoid Claims

11

Court jurisdiction over action founded on contract with the United States). Second, agency action is reviewable under the APA only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. RIHMFC maintains the Claims Court cannot provide adequate relief because RIHMFC seeks a prospective declaration as to future HAP adjustments, applicable to all of its Section 8 contracts, and thus money alone will not do the trick.[7] This familiar argument is without merit. See Am. Sci. & Eng'g, 571 F.2d at 62 (it is of no

---

[7] RIHMFC relies on Bowen v. Massachusetts for the notion that a money judgment in the Claims Court would be insufficient, and that this Court could grant monetary relief to RIHMFC as an "adjunct" to the prospective relief it seeks through the APA. 487 U.S. 879 (1988). However, Bowen (the source of much confusion in the world of Claims Court jurisprudence) offers RIHMFC little solace because many aspects of the case differ from this case in significant ways. Bowen involved a challenge to a final decision by the Secretary of Health and Human Services regarding Medicaid reimbursement refusals. Id. at 882. The Supreme Court allowed the APA claim and held that the Claims Court could not have offered the State an adequate remedy, given the complex ongoing federal-state relationship; thus, the District Court could "enforce the statutory mandate itself, which happens to be one for the payment of money." Id. at 900, 905. The contention was that the Secretary improperly interpreted Medicaid regulations; for reasons already discussed, RIHMFC has no such statutory or regulatory claim here -- its challenge is based on the ACC. Suffice it to say post-Bowen, courts are on high alert for litigants "dressing up a claim for money as one for equitable relief" to fall within the APA. Suburban Mortgage Assocs., Inc. v. United States Dep't of Hous. & Urban Dev., 480 F.3d 1116, 1124 (Fed. Cir. 2007). The Court rejects RIHMFC's attempt to do so here. See Burgos v. Milton, 709 F.2d 1, 3 (1st Cir. 1983) (APA inapplicable to claims sounding in contract); Commonwealth of Massachusetts v. Dep't Grant Appeals Bd., 815 F.2d 778, 783 (1st Cir. 1987) (plaintiff cannot avoid Tucker Act by characterizing contract action as equitable in nature); Katz, 16 F.3d at 1211 n.1 (Rader, J., dissenting) (collecting Circuit cases reading Bowen to reinforce Tucker Act jurisdiction over contract claims).

concern that Claims Court cannot provide the <u>precise</u> equitable relief desired); <u>Portsmouth Redevelopment & Hous. Auth. v. Pierce</u>, 706 F.2d 471, 474 (4th Cir. 1983) (improper to deny Claims Court jurisdiction when claimant primarily seeks monetary relief); <u>Suburban Mortgage</u>, 480 F.3d at 1126 (district court is not proper forum for claims seeking monetary rewards from the Government). In sum, biting at the APA bait here would undermine the purposes of the Tucker Act. <u>See Megapulse</u>, 672 F.2d at 967; <u>Warner v. Cox</u>, 487 F.2d 1301, 1306 (5th Cir. 1974) ("[I]t is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA . . . [w]e refuse to believe that Congress intended, in enacting the APA, so to destroy the Court of Claims by implication.").[8]

Moving on, RIHMFC suggests the Court has federal question jurisdiction under 28 U.S.C. § 1331 (over the APA count <u>and</u> breach of contract count) because the issues arise under the United States Housing Act of 1937.   This argument misses the mark.   § 1331 states: "The district courts shall have original jurisdiction of

---

[8] Moreover, the Court agrees with two recent decisions on near identical issues that the agency's prospective concerns as to other Section 8 contracts will be alleviated by the practical <u>res judicata</u> effect of a retrospective money judgment against HUD in the Claims Court.   <u>See Cathedral Square Partners Ltd. P'ship v. S. Dakota Hous. Dev. Auth.</u>, 2009 WL 873998, *8 (D.S.D. Mar. 30, 2009); <u>Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.</u>, 2009 WL 449100, *8 (N.D. Ill. Feb. 23, 2009).

all civil actions arising under the Constitution, laws, or treaties of the United States." There is no dispute that in general terms, federal law provides a backdrop for this dispute. But invocation of federal statutes, regulations or housing contracts that are printed and regulated by HUD -- in and of themselves -- fall short of conferring § 1331 jurisdiction. See Am. Sci. & Eng'g., 571 F.2d at 63 (likening effort to ground jurisdiction in federal question to characterizing it as an APA claim and rejecting both as undercutting Claims Court jurisdiction over contract claims); 1610 Corp. v. Kemp, 753 F. Supp. 1026, 1030-32 (D. Mass. 1991) (action involving HAP contract did not arise under federal law for purposes of § 1331 jurisdiction); see also Lindy v. Lynn, 501 F.2d 1367, 1369 (3d Cir. 1974).[9] The long and short of it is that a breach of contract claim does not become a federal question just because it is directed at the Government. "This fine distinction is insufficient to circumvent the jurisdiction of the appropriate

---

[9] Katz, 16 F.3d at 1208 does not command a different result. Katz involved a Section 8 builder who challenged HUD's interpretation of the regulations governing calculation of contract rents. Id. at 1205-06. The Federal Circuit held that it was not a contract case because the builder had no privity with the Government and did not seek money damages. Id. at 1208-10. Thus, the suit for enforcement of federal law was within the District Court's jurisdiction under § 1331 and the APA. In contrast, this is a contract case between HUD and RIHMFC, which is in privity with the Government and does seek money damages. As such, RIHMFC's claim that the correctly-interpreted statutes and regulations violate rights in the ACC agreement belongs in the Claims Court.

court." S.J. Groves & Sons Co. v. United States, 495 F. Supp. 201, 206 (D. Colo. 1980).

Lastly, the Court sees no need to delve into the final topic upon which the parties have touched but not fully briefed nor argued: whether sovereign immunity has been waived under 42 U.S.C. § 1404a, the so-called "sue-and-be-sued" clause with respect to the functions of the Secretary under the United States Housing Act of 1937. It is true, of course, that waiver of immunity is (along with subject matter jurisdiction) a prerequisite to keeping RIHMFC's claim against HUD in this Court. United States v. Sherwood, 312 U.S. 584, 586-87 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued.").[10] But HUD directed its motion solely at jurisdiction, and if jurisdiction in this Court is wanting then the § 1404a waiver issue becomes largely irrelevant. See generally Weeks Constr., Inc. v. Oglala Sioux Hous. Auth., 797 F.2d 668, 675 (8th Cir. 1986) ("Where the United States is the real party in interest, courts have found that waivers of sovereign immunity other than the Tucker Act should not apply."). Because the Court has determined that RIHMFC's action is not a valid APA claim nor a proper invocation of federal

---

[10] There appears to be no dispute that RIHMFC's action against the Secretary in his official capacity is against the United States. See Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 29 (1st Cir. 1988). HUD's position is that ACC payments are made with money from the public treasury rather than a fund in the possession and control of HUD; thus, RIHMFC's claims do not fall within § 1404a's limited waiver.

question jurisdiction, and hence belongs in the Claims Court, it declines the invitation to enter the "source of funds" debate.[11]

When all is said and done, dismissing HUD is a frustrating result for RIHMFC and, frankly, the Court because of its overarching interest in judicial economy. Yet jurisdiction cannot be created where none exists. To that end, after the Order to dismiss RIHMFC's complaint against HUD is entered, the Clerk is directed to schedule a status conference with Village West and RIHMFC in which the Court will set a schedule and discuss the possibility of accelerating resolution of Village West's claim.[12]

-------

[11] This debate centers on whether § 1404a waives immunity only with respect to money in the possession and control of a particular agency, or whether this framework based on Fed. Hous. Admin., Region No. 4 v. Burr, 309 U.S. 242 (1940) is a circular and illogical judicial fiat. See, e.g., C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co., 903 F.2d 114, 120 (2d Cir. 1990); Portsmouth Redevelopment & Hous. Auth. v. Pierce, 706 F.2d 471, 473-74 (4th Cir. 1983); Auction Co. of Am. v. FDIC, 132 F.3d 746, 751-52 (D.C. Cir. 1997).

[12] Though no party raised the issue, the Court sua sponte considers its jurisdiction over Village West's claim against RIHMFC. See In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988). Whether a federal issue between private parties is sufficiently important to confer "arising under" jurisdiction per 28 U.S.C. § 1331 is a "remarkably tangled corner of the law." Almond v. Capital Props., Inc., 212 F.3d 20, 22-24 (1st Cir. 2000). The Court is satisfied that § 1331 jurisdiction exists here. At first glance, this may seem at odds with the decision on HUD's motion but it is not. RIHMFC's arguments notwithstanding, a contract claim against HUD is a different animal compared to a contract dispute between private parties presenting a substantial question of federal law. Importantly, the Tucker Act separates RIHMFC's claim against HUD from the Capital Props. "private parties" line of authority -- indeed, in that case, the defendant brought a separate suit against the Federal Railroad Administration in the Claims Court. Id. at 22 n.1; see also Cathedral Square,

V.   Conclusion

For the foregoing reasons, HUD's motion to dismiss is GRANTED. RIHMFC's third-party complaint shall be DISMISSED without prejudice for refiling at the appropriate time in the Court of Federal Claims.

IT IS SO ORDERED.

_____

William E. Smith
United States District Judge
Date: 5/20/09

---

2009 WL 873998 at *4 n.1 (retaining jurisdiction over Section 8 owners' claims against state housing agency).

17